### DEUEL *vs.* RUST.

The preliminary affidavit, in summary proceedings to recover the possession of demised premises, under the statute, must make out a plain case, and show the relation between the parties to be that of landlord and tenant.

The summons, besides describing the premises, should require the defendant forthwith to remove from the same, or show cause why possession of said premises should not be delivered to the applicant. It should also be directed to the tenant, by name.

In order to perfect an appeal to the county court from the decision of a justice, in proceedings of that nature, security must be given.

Notice of appeal must be given in the manner provided by § 354 of the code. Security for the judgment must be given, in the form prescribed by § 356 of the code, which must be approved by some officer formerly competent to allow appeals to courts of common pleas. And, in addition to this, in case of an appeal by the tenant, in order to stay the issuing of the warrant or execution, security must also be given for the payment of all rent accruing or to accrue upon the premises subsequent to the application to the justice.

If security is not given, on appeal to the county court, no appeal is properly taken, and the proceedings are not removed to that court. Consequently the county court has no jurisdiction of the case, either to affirm or reverse the judgment of the justice, and can render no valid judgment, except to dismiss the appeal.

The judgment of the county court, in such proceedings, is not capable of being reviewed by way of appeal. It is *final* in the sense of being *ultimate and conclusive;* at least so far as review by the supreme court, upon appeal, is concerned. BIRDSEYE, J., dissented.

APPEAL from a judgment of the county court of Dutchess county reversing the judgment of a justice's court, in summary proceedings for the removal of the defendant from the possession of demised premises.

*W. S. Eno*, for the appellant.

*G. W. Paine*, for the respondent.

*By the Court*, BIRDSEYE, J.  A more remarkable succession of errors than is exhibited in this case, it would be difficult to imagine. The affidavit of the plaintiff altogether fails to show, except by a mere implication, any of the facts authorizing the removal of the defendant from the premises. It

Deuel v. Rust.

cannot be gathered from the affidavit, whether the defendant was a tenant or lessee, at will or at sufferance, or for any part of a year, or for one or more years. And yet, unless he came within one or another of these descriptions, he could not be proceeded against under this statute. It does not appear that the relation of landlord and tenant existed between the parties at all. If it be sufficiently averred that the defendant ever did rent the premises, it does not appear that he rented them of the plaintiff, or went into possession as his tenant. If he did rent of the plaintiff, he may have rented for his own life, or for that of another person. Upon the affidavit it may be that the defendant rented the premises of some person other than Deuel, perhaps his tenant, who may have consented to his holding over, and may have had full right to give such a covenant, though Deuel would not and did not give it.

It has been properly held that in such proceedings the preliminary affidavit must make out a plain case, and show the relation between the parties to be that of landlord and tenant. (*Hill* v. *Stocking*, 6 *Hill*, 314. And see *Cunningham* v. *Goelet*, 4 *Denio*, 71; *Benjamin* v. *Benjamin*, 1 *Selden*, 388.)

The summons in the case is not such as is required by the statute. (2 *R. S.* 513, § 30, *as amended by chap.* 460 *of the Laws of* 1851.) It merely requires the defendant to "show cause why he *should not leave* the premises now occupied by him, belonging to Jay Deuel." The premises are not *described*. *Non constat*, but that the defendant may have occupied other "premises belonging to Jay Deuel," than the house and lot mentioned in the affidavit. The summons, besides "describing the premises," should have required the defendant "forthwith to remove from the same," or show cause "why *possession of said premises should not be delivered to said applicant.*" The summons should also have been directed to the tenant by name, instead of being directed to any of the constables of the county. (6 *Hill*, 316.) If the defendant's tenancy was at will, or at sufferance, it does not appear to have been terminated "by giving notice in the manner prescribed by law." (*Ib.* § 31.)

The service of the summons was also irregular. Instead

of delivering to the alleged tenant a true copy of the summons, and at the same time showing him the original, the original does not seem to have been shown at all. It may be justly inferrible that a copy was shown to and read by the defendant, and not delivered to or left with him.

The proceedings at the return of the summons were also wholly irregular. Instead of waiting the one hour required by statute, (2 *R. S.* 233, §§ 44, 46,) the justice went away, and remained certainly more than an hour. It may have been only just less than two hours. Whether the defendant appeared at the hour fixed for the return of the summons, is not stated, though the justice says "the defendant was not present to his (the justice's) knowledge." Neither is there any certainty that the defendant did not appear within the hour after the time fixed for the return of the summons, and depart again, believing, from the absence of the justice, that the proceedings were abandoned. It would seem, therefore, that the whole proceeding before the justice was *coram non judice,* and void.

The justice, however, proceeded to render judgment, "that said defendant be turned from said premises," and for costs; and a warrant was issued to remove him. At this stage of the case the defendant sought to remove the proceedings by appeal to the county court. A notice of appeal was served, but no undertaking, bond or security was given; and no affidavit of the appellant, or any one in his behalf, was served. The defendant contends that no security was required. Upon an examination of all the provisions of section 5 of chap. 193, p. 292, of the laws of 1849, (*see* 2 *R. S.* 757, 760, §§ 51–53, 4*th ed.*) I entertain no doubt that security must in all cases be given to perfect an appeal from the decision of a justice of the peace in such summary proceedings. It is true the statute provides that such proceedings "may be removed by appeal to the county court of the county, in the same manner, and with the like effect, and *upon like security* as appeals from judgments of justices of the peace in civil actions." It is true, also, that when this act was passed, on the 3d of April, 1849, the *manner* of appealing, as prescribed by sections 303, 304, of

the code of 1848, was to prepare an affidavit on the part of the appellant, stating the substance of the testimony and proceedings before the court below, and the grounds upon which the appeal was founded; to serve a copy of the affidavit, with a notice of the appeal and of argument, on the respondent or the justice. And no security was required to be given, unless the appellant desired a stay of proceedings on the judgment. The provision as to security on appeals to the county court from judgments of justices' courts in civil actions is still the same; the giving of security being optional with the appellant, and being required only when a stay of execution is desired.

The alterations made in the method of appealing from the justice's court to the county court, by subsequent statutes, clearly apply to the manner of appealing in the summary proceedings under the act of 1849. The statute which then required appeals to be taken by the making and service of an affidavit, and the service of a notice of appeal and of argument, has been repealed. It is gone entirely. It cannot be retained for one purpose and abrogated for all others. Since its repeal, and the substitution in its place of other provisions of law, it has, except as to rights vested before its repeal, no more vitality than if it had never been enacted. There was, therefore, in this case, no need of the affidavit stating the testimony and proceedings before the court below, and the grounds of the appeal. And were there no other provisions on the subject, there would have been no necessity for giving security on the appeal, unless a stay of execution had been desired. But sub. 3 of § 5, of the act of 1849, (*Laws of* 1849, *p.* 293, *and* 2 *R. S.* 760, § 53. 4*th ed.*) expressly provides that "no appeal shall, under this act, be allowed, unless *such* security for said judgment shall be given and approved by the judge at the time of allowing such appeal, and served on the justice with the affidavit for appeal." The words, "such security for said judgment," here, obviously refer to the "security" mentioned in the first sentence of the preceding subdivision, 2d of the same section, and which is also mentioned in the first clause of the second sentence of the same subdivision. "Such security" is different from the further·

"security" for the subsequently accruing rent, which in case of an appeal by the tenant, is required by the last sentence of the subdivision, to be given, "in addition to the security for such judgment."

Taking the whole statute together, then, and reading it in connection with the other statutes on the subject of appeals from justices' to county courts, I think the method of appealing will be as follows: The notice of appeal must be given in the manner provided by section 354 of the present code. "Security for the judgment" must be given, in the form prescribed by section 356 of the code, which, it would seem, from sub. 3 of § 5, of the act of 1849, must be approved by some officer formerly competent to allow appeals to courts of common pleas, (2 *R. S.* 258, § 191, [187,]) although no allowance of the appeal itself is now necessary. In addition to this, in cases of an appeal by the tenant, in order to stay the issuing of the warrant or execution, security must also be given for the payment of all rent accruing or to accrue upon the premises subsequent to the application to the justice.

As no security, whatever, was given in the present case, no appeal was properly taken, and the proceedings were not removed to the county court; consequently, that court had no jurisdiction of the case, either to affirm or reverse the judgment of the justice. The motion to dismiss the appeal, which was made and denied, should have been granted. The judgment subsequently rendered was void, for want of jurisdiction. But it is said that whatever may have been the judgment of the county court, it was *final*, and cannot be reviewed here. The 2d subdivision of the 5th section of the act of 1849, declares that on the appeal in such summary proceedings, the decision of the "county judge shall be an affirmance or reversal of such judgment, *and be final*." Perhaps the most obvious meaning of this provision is, that the judgment of the county court, in such a case shall not be subject to review in this court. That interpretation is, however, not quite satisfactory to my own mind. By section 317 of the code of 1848, in case of an ordinary appeal to the county court, that court might either order

Deuel *v.* Rust.

a new trial, or might affirm or reverse the judgment of the court below, in whole or in part, and as to any or all the parties. The same provisions, in substance, are contained in section 366 of the present code. Under these provisions the county court might, when the act of April 3, 1849, was passed, and may still, render judgments upon appeal from justices' courts, which are *not "final;"* that is, which do not declare, ultimately, without further judicial examination, the rights of the litigants.

The power of ordering a new trial, thus conferred upon the county court, was wholly new. Previously they could, in similar cases, only "affirm or reverse the judgment, in whole or in part." (2 *R. S.* 257, § 185, 181.) It may well be supposed, that in 1849, in passing the new act as to these summary proceedings, the legislature would have in view the usual power of awarding new trials thus conferred on county courts, and would withhold such a power in proceedings designed to be *summary.* In these summary proceedings between landlord and tenant, therefore, no such judgment can be given. The decision, when given, must be "final;" not requiring further action in that court or the court below, in order to a final determination of the rights of the parties. But when the judgment of the county court has been given, it becomes one which may be reviewed in this court by appeal, under section 344 of the code. For there seems to be good ground for the opinion that although these proceedings to recover the possession of land, under art. 2 of title 10 of chap. 8 of part 3 of the revised statutes, are, as they are declared to be, *summary,* yet they come within the definition of *civil actions,* as defined by the code, §§ 2, 4, 5, 6. Chapter 8 of the 3d part of the revised statutes does, indeed, relate to "proceedings in special cases;" and among these "*special cases*" are these "summary proceedings to recover the possession of land in certain cases." But the same chapter regulated the bringing and maintaining of suits by poor persons, as well as proceedings by and against infants, and suits by and against executors and administrators, and against heirs, devisees and legatees, and suits against sher-

iffs, surrogates and other officers, on their official bonds, and actions for penalties and forfeitures, &c. And no one will doubt that all these proceedings are *actions*, within the definition of the code; nor that they are to be " conducted in conformity to" the code.    (§ 471.)

Although the proceedings in the case now before the court are " *summary*," and are given and regulated by the same chapter, I am disposed to think that, since the act of 1849, giving jurisdiction of such cases to justices of the peace, and directing them to " render judgment," according to the finding of the jury, or, if no jury be called, according to their own final decisions, and to " include in such judgment the costs of such proceedings to the prevailing party," and allowing the review of such judgments by the county court, the proceeding at least when taken before a justice of the peace, becomes " an ordinary proceeding in a court of justice, by which a party prosecutes another party, for the enforcement and protection of a right, or the redress or prevention of a wrong." It is, therefore, a *civil action*, under sections 2 and 6 of the code.    And by sections 8 and 344, the judgment of the county court in such a proceeding is subject to review, on appeal, in this court.

Where, however, the proceedings are not before a justice of the peace, under the act of 1849, the magistrate is not required to enter any " judgment," but simply to issue his warrant for the removal of the tenant, (2 *R. S.* 514, § 33, *and* 515, § 39.)    In such a case, the county court has no jurisdiction, and this court can review the proceedings only by certiorari, under the provisions of section 47 of the article of the revised statutes relating to these proceedings.

It will be said, I am aware, that the 471st section of the code is conclusive against this view.    It is true, that section provides that *the second part* of the code shall not affect certain enumerated proceedings, among which are the proceedings provided for by chapter eight of the third part of the revised statutes, by which these summary proceedings are given.    But the same section also provides that when, in consequence of

any of the proceedings there enumerated, " a civil action shall be brought," it shall be conducted in conformity to that act. The summary proceedings thus given are to result in a "judgment," a judgment, too, which any justice of the peace of the state may give, as to premises situated in his city or town. The justice is required to " enter in his docket" the finding of the jury, or in case no jury is called, his own final decision, " and render judgment therefor, and include in such judgment costs of such proceedings to the prevailing party, at the same rate of fees now allowed by law in (the then existing) civil actions in courts of justices of the peace and limited in like manner." (*Laws of* 1849, *ch.* 193, § 5, *subd.* 1.) The justice may direct the collection of such costs either in the warrant for the delivery of possession, or by execution issued by him. (*Id.*) The judgment thus rendered is, by the next subdivision, capable of being removed by appeal to the county court, in the same manner, and with the like effect, and upon like security as appeals from the judgments of justices of the peace in (other and then existing) civil actions. The county court is to decide such appeal by an absolute judgment, in favor of one party or the other. It would be singular if by this stage of the case, it had not acquired the character of "an ordinary proceeding in a court of justice, by which a party prosecutes another for the enforcement and protection of a right, or the redress or prevention of a wrong." If it has, it is to be conducted according to the code, and our jurisdiction attaches to review the proceedings on appeal. The fitness of our possessing and exercising such a jurisdiction will appear, when it is considered that the power to dispose of the possession of lands, and to adjudicate upon the rights of contending claimants to lands, is given to the most numerous class of magistrates in the state. These magistrates, too, are not usually men of legal education. They are, especially, unlikely to be familiar with the rules of law applicable to real estate. In no other case, to my recollection, are they authorized to adjudicate upon questions relating to real estate. And in no other class of " special" or " summary" proceedings, so far as I now recollect, is the magistrate

required to keep a docket, and render judgment, and award costs and collect the same by execution, and make return to appeals.

I reach the conclusion with no little hesitation; but I conclude, upon all these considerations that the provision of the act of 1849, directing that the judgment of the county court shall in a case like the present, "be final," means that it shall be absolute, in favor of the one party or the other, and shall require no further judicial action before it shall declare finally the rights of the litigants. No new trial can be awarded; but the judgment itself may be reviewed upon appeal in this court.

In this view of this question, however, my brethren do not concur, though they unite in the views above expressed, as to the proceedings previous to the judgment of the county court. They are of opinion that the judgment of the county court is not capable of review here by way of appeal. That it is *final* in the sense of being *ultimate and conclusive,* at least so far as our review by appeal is concerned.

This being the judgment of the court, the present appeal must be dismissed, but without costs.

[DUTCHESS GENERAL TERM, April 14, 1857. *S. B. Strong, Birdseye* and *Emott,* Justices.]